JOHN CADWALLADER AND WIFE *v.* ABNER H. LONGLEY, ET AL.

1. This court, by virtue of its chancery power, has jurisdiction of an action on behalf of one or more heirs, to compel an administrator· to render an account of his administration and distribution of an estate.

2. The sureties on an administration bond are under no obligation to render an account; before they can be held liable on their bond, the liability of their principal must first be ascertained and established.

SPECIAL TERM.—On demurrer to petition. The plaintiffs, as heirs of David B. Bassett, deceased, file their petition against the original administrators of Bassett's estate, and their sureties; against the administrator *de bonis non*, of that estate, and the other heirs, together with several unpaid creditors, alleging that the accounts were fraudulent, and that there are moneys in the hands of the original administrators unadministered, and claiming a distribution to the heirs, and praying that an account may be stated between the plaintiffs, the administrators and their sureties, and that plaintiffs may have judgment against the original administrators and their sureties, for the balance yet unadministered.

To this petition, S. S. Clark, one of the sureties on the original bond of administration, files his demurrer for the causes:

1. That this court has no jurisdiction of the subject of the action.

2. That plaintiffs have not legal capacity to bring this suit.

32

3. That there is a defect of parties plaintiff.

4. That the petition does not state facts sufficient to constitute a cause of action against him.

5. That there is a misjoinder of parties defendant.

*Lee & Fisher*, for plaintiffs.

*Jacob Burnet*, for S. S. Clark.

*Snow & Lynd*, for A. H. Longley, Administrator.

SPENCER, J. The petition sets forth that in the year 1838, David B. Bassett died in Hamilton county, leaving a widow, Sophronia, and three children, of whom Amelia, the wife of Cadwallader, and coplaintiff with him, was one. That in October following, letters of administration on his estate were granted to said widow and Flavel Hunt, who gave bond for the faithful performance of their duties, with Luke Kendall and S. S. Clark as sureties, in the sum of $22,000. That in August, 1839, said Sophronia intermarried with the defendant, Longley, and with him, from thenceforth, jointly administered on said estate. That in November, 1840, certain lands of deceased, having been ordered to be sold for payment of debts, further bonds were required, and were entered into by said Longley and wife, with David Mills and W. J. R. Leigh as sureties, with like condition. That afterward, a large amount of money arising from such sales, came into the hands of said Longley and wife, as such administrators, and that in July, 1845, they rendered an account to the court granting said letters, in which it was represented that said estate was insolvent; that the just claims against it were $16,211, while the assets were only $13,589; and by means of such representations, induced the court to make an order directing said administrators to pay a dividend to creditors of 70 per cent. on their respective claims. That in point of fact, said estate was not insolvent, nor did it owe the sums represented to be due said creditors, and allowed to be paid to them; nor have said administrators paid said sums ordered

to be paid to them, but retained, and said Longley still retains, the whole amount thereof in his own hands, refusing to account therefor to the plaintiff and her coheirs, who, it is averred, are entitled to distribution thereof. That in May or June, 1851, said Longley (his wife then deceased) and Hunt were removed from said administration, and the defendant, Lloyd S. Brown, appointed administrator *de bonis non*, in their stead. Plaintiffs make their coheirs the creditors of deceased; the administrator *de bonis non*, and the sureties of said Longley and wife, defendants, and demand judgment for said sum of $13,589, and interest; or, if it shall appear that any of said claims against said estate were just, or said administrators have paid out properly any part of said assets, then a judgment against said Longley, and his bail, for such balance as may be unadministered in his hands.

To this petition a demurrer has been filed by Clark, one of the sureties on the administration bond. Several grounds of demurrer have been taken, which it is not deemed necessary to notice specially. The plaintiffs certainly have the legal capacity to sue, and have a sufficient interest in the subject of the action to bring a suit in their own names, provided they have a just cause of action at all. Now, if their claim against the demurrant be well founded, is there an improper joinder of defendants? The only grounds of demurrer, therefore, to be relied on, are:

1. That this court has no jurisdiction of the subject of the action.

2. That the petition does not disclose a sufficient cause of action against said defendant, Clark.

As to the matter of jurisdiction, so far as the petition seeks to control the administrators' account, this question seems to me settled by the case in 6 Ohio, 429, *Cram* v. *Green*. That was the case of a bill in chancery brought by the next of kin against the administrators, alleging that defendants had neglected and refused to settle their administration accounts, or to make distribution of the estate,

and concluding with a prayer for settlement and distribution. The court held it to be the common case of enforcing a trust, and say: "It is a well-settled course of chancery, at the instance of creditors, legatees, and the next of kin, to compel an account and distribution of decedent's estates against executors and administrators. The position they occupy is not in their own right, but fiduciary; and any one whose interests they hold, may enforce them, through chancery, to perform their duty in the execution of the trust." If the enforcing of such a trust be an exercise of the ordinary jurisdiction of a chancellor, then this court, having the powers formerly exercised in chancery, possesses jurisdiction over the subject of the action, so far as the account is required; and a proper case is made for requiring the old account to be opened up, in the averment that such account was fraudulent and fictitious.

II. As to the other question of jurisdiction involved in the plaintiffs' demand of judgment against the sureties on the bond, I do not consider it necessary to decide in the present case, whether an administrator's bond, taken under the law of 1831, can be sued anywhere else than in the court in which it was filed, or, whether the court of common pleas have exclusive jurisdiction of actions thereon, as upon bonds taken under the law of 1840. Since upon the other ground of demurrer taken, I am satisfied that the petition does not disclose any ground of relief, or claim against Clark, the surety. So far as the administrators have failed to render an account of their proceedings, or so far as the account rendered is alleged to be false, and a new and further account is demanded, the sureties in the bond have no interest in the plaintiffs' claim. There is no charge made, nor relief asked, against them, in this particular. They are under no obligation to account. And so far as any claim is made against them on the bond itself, it is premature, and moreover, with respect to this, there is no community of interest between them and their codefendants. Before the sureties in an administration bond can be held liable thereon, the

claim of the plaintiff must be ascertained and established against the principal himself. Under the administration law of 1840, this is required by express provision. See sections 182, 183; 1 Curwen, 744, 745. And such has been judical construction under prior laws; 3 Ohio, 225, *Treasurer of Pickaway Co.* v. *Hall;* 4 Ohio, 98, *Stewart* v. *Treasurer of Champagne Co.;* 5 Ib. 240, *Treasurer of Montgomery Co.* v. *Lowry, et al.*

The first of these cases was an action of debt on an administrator's bond, in which the breaches set out were that the administratrix did not return an accurate statement of sales, and of moneys received and paid out; that she had not presented her account for settlement, nor paid to the parties entitled, the moneys due them, but had wasted the funds that came to her hands, and that she had neglected and refused, though specially requested, to pay to plaintiffs the proportion of moneys that before that time came to her hands as administratrix, and to which plaintiffs, as heirs at law, were entitled. Held, upon demurrer, that the action was not well brought, because, as the court say, "The surety is not the proper person to adjust the rights of parties interested in the administration. He can know nothing of the true state of the accounts, nor of the conduct of the administrator, and can not be the most suitable person to litigate or defend them. It is, therefore, that it would seem, most proper to hold him only responsible where the right of the claimant has been judicially established, either by settlement with the court, or judgment in an action direct against the administrator. We consider it much the safer doctrine to require proceedings first against the administrator himself, and only allow a resort to the surety when nothing is to be considered but the question óf payment."

A petition where the case shows, as here, that there has been a judicial settlement of the administrators' account, which has not yet been successfully impeached, and by which it appears that the plaintiffs have no interest in the money sought to be recovered.

The second case cited, while it approves of the decision in the first, qualifies the principle laid down, and restricts it within much narrower bounds.

This was an action brought upon an administrator's bond by a creditor of the estate, in which it was averred that the plaintiff had obtained a judgment against the administrators, and that assets to a certain amount had come to their hands which they had wasted, but there was no averment that an execution had issued on the judgment, or of any adjudication that the administrator had wasted the assets. The court held that the action was not properly brought, because "a *devastavit* can not be first established in the suit against the administrator and his sureties upon the bond," but must first be established in some other way. Same point in the case in 5 Ohio, 240.

Now, in the case before us, so far as it is averred that the administrators of Bassett have falsely held out certain debts as existing against the estate for which appropriations have been made and the money fraudulently paid or retained by the administrators, it presents, substantially, a case of *devastavit*, or wasting of the property of the estate, and is identical with the case first above cited. And in so far as it alleges no *devastavit*, but the non-payment to the plaintiffs, as distributees of the estate of Bassett, it shows no adjudged claim in their favor, either by settlement or by action against the administrators, and is identical with the case first above cited, and must be governed by it.

I am of opinion, therefore, that in neither point of view does the petition disclose any cause of action against the sureties of Bassett's administrators, as to whom the petition ought to be dismissed. The demurrer is sustained, and judgment will be entered upon it in favor of Clark, for his costs.

Demurrer sustained.